IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

BRENDA A. RICKETTS,          §
    Plaintiff,          §
                    §
VS.          §          C.A. NO. C-04-242
                    §
CHAMPION CHEVROLET          §
    Defendant.          §

**ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff filed suit against Defendant on May 3, 2004 claiming gender discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. Defendant filed a Motion for Summary Judgment on June 14, 2005. Plaintiff filed a Response to Defendant's Motion for Summary Judgment on July 5, 2005. For the reasons stated herein, the Defendant's Motion for Summary Judgment is granted.

**I.  JURISDICTION**

The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

**II.  UNDISPUTED FACTS**

In 2002, Plaintiff began working for Vista Chevrolet, which after a change in ownership became Champion Chevrolet ("Champion"). (Pl. Depo., p. 10). Plaintiff was an at-will employee. Id. at 102. She worked in the Finance and Insurance ("F&I") Department, where she arranged financing and sold warranties, credit life and disability insurance, and theft protection devices for vehicles sold at the dealership. Id. at

28-29.

F&I performance is measured against a projection generated by the dealership.  (Pl. Depo., pp. 134-36; Bregman Depo., pp. 29, 32). It is measured in terms of actual profit of the dealership or "per vehicle revenue" ("PVR"), and the Product Index, referring to the total number of products sold per vehicle. Id.

In approximately December 2003, Rick Ford became General Manager ("GM") of Champion.  (Ford Depo., p. 43).  Superior F&I performance was a priority for Mr. Ford.  (Ford Aff. ¶ 6; Pl. Depo., pp. 41-42).

During Mr. Ford's interview process and initial evaluation periods at Champion, he reviewed each department with Jason Lacher, District Finance Director.  (Ford Aff. ¶ 7).  Mr. Lacher pointed out that the F&I Department at Champion had been underperforming for a long time and needed substantial improvement.  Id.  Based upon what Mr. Ford observed after becoming GM, he agreed with this assessment.  Id.  The department consistently missed its PVR and Product Index targets.  Id.

In 2003, Champion's PVR goal was only $850, and they did not always hit the goal.  (Williams Depo., pp. 37-38).  While Plaintiff was at Champion, the department consistently missed the

target by about $350.  (Pl. Depo., pp. 42-43).[1]  Once Mr. Ford
became GM, he raised the target PVR to $1,100.[2]  (Ford Aff. ¶ 7).

Both Mr. Lacher and Mr. Ford pointed out to Plaintiff that
the F&I numbers were below target.  (Ford Aff. ¶ 9 & Pl. Depo.,
pp. 89-90).  Mr. Lacher reviewed the F&I numbers every month, and
always told Plaintiff when her numbers were below the projected
goal.  (Pl. Depo., pp. 89-90, 162-64 & Ex. 27).  Mr. McClarty,
the acting GM before Mr. Ford took over, complained that
Plaintiff was not aggressive enough on car deals.  (Williams
Depo., pp. 10-12, 32-33).  When Mr. Ford became GM, Champion's
F&I Department had consistently performed in the lowest quartile
in the region.  (Ford Aff. ¶ 7).  In fact, while Plaintiff worked
for Champion, the best it ever ranked in F&I performance was
approximately in the middle of the district.  (Pl. Depo., p.
171).

On December 15, 2003, Mr. Ford e-mailed plaintiff about the
low F&I numbers and asked her to formulate a plan for improvement
by the end of the month.  (Pl. Depo., p. 165 & Ex. 27).
Plaintiff received the request, but never complied.  Id. at 169.

Because of these performance issues, Mr. Ford restructured

---

[1] Plaintiff states that the F&I department set a record for performance
in December; however, the testimony cited actually shows that despite the
"record" performance, the target PVR was still missed by $150 and the
performance was still in the fourth quartile.  (Ford Depo., pp. 151-52).

[2] Mr. Ford's affidavit states the target PVR was raised to $1,100 "per
month."  (Ford Aff. ¶ 7).  This appears to be a typographical error or an
incomplete sentence as it is apparent from the context that the target PVR was
raised to $1,100 per vehicle.

the F&I Department and made other changes at Champion, which affected Plaintiff's compensation plan.  (Ford Aff. ¶¶ 4, 6). One of the changes Mr. Ford made was hiring Monty Meave ("Meave") as F&I Director.  Mr. Meave was hired to manage the department and to communicate with lenders to approve deals, but not to contract the deals himself.  (Ford Aff. ¶ 8).  The F&I Managers were then to report directly to Mr. Meave.  Id. at ¶ 6.

On January 8, 2004, Mr. Ford told Plaintiff he was hiring Mr. Meave because he wanted someone with more experience to run the F&I Department.  (Pl. Depo., pp. 43-44).  Mr. Ford offered Plaintiff the option to stay at Champion as an F&I Manager or to transfer to another dealership, Champion Ford/Mazda, as an F&I Manager.  Id. at 46-47.  He told her he believed it would be in her best interest to transfer to the other dealership.  (Pl. Depo., pp. 46-47; Ford Aff. ¶ 4).

Mr. Ford testified that he selected Mr. Meave as F&I Director at Champion because he had talent and experience critical to the position.  Id. at ¶ 8.  Mr. Ford had observed Mr. Meave's performance at another dealership, and believed he was the best choice for the F&I Director at Champion.  Id.  Mr. Meave had worked for Ford Motor Credit and had extensive knowledge of structuring deals with captive financing.  Id.  In addition, Mr. Meave demonstrated expertise at developing the skills of F&I Managers reporting to him, which maximized their personal commissions and revenue for the dealership.  Id.  Plaintiff

4

admits that this is an important ability for someone in charge of the F&I Department.  (Pl. Depo., p. 150).  She also admits that Mr. Meave had experience she herself lacked because he had worked in finance for a major automotive manufacturer.  Id. at 32, 54. Finally, Plaintiff admits that Mr. Meave's position was not the same as hers when she worked at Champion.  Id. at 60-61.

Mr. Ford testified that his sole reason for the changes at Champion was to improve performance and revenues.  (Ford Aff. ¶ 13).  As a result of the changes, Champion's profitability increased drastically.  Id.  "Flash Reports" reflecting F&I performance during Plaintiff's employment at Champion are consistently lower for each month in 2003 than for the corresponding months in 2004 after Mr. Meave became F&I Director. (Pl. Depo., pp. 138-40 & Exs. 16-21).  Additionally, the average PVR is now up to approximately $1,100 to $1,200 per car. (Bregman Depo., p. 32).  The F&I Department now consistently performs in the top quartile of the region and in 2004, improved to fourth in the nation.  (Ford Aff. ¶ 7; Williams Depo., pp. 31-32).

## III.  PLAINTIFF'S ALLEGATIONS

Plaintiff claims that Mr. Ford hired Mr. Meave as F&I Director and demoted her because she is a woman.  (Pl. Depo., p.13).  Plaintiff basis her claim on various comments by Mr. Ford that referenced plaintiff's gender in an unflattering way.  For

example, plaintiff claims that Mr. Ford stated "that he was not married so he wouldn't have to deal or speak to a woman." (Pl. Depo., p. 14).  Later, when Plaintiff mentioned "something about the sun rising in the east and setting in the west," Mr. Ford allegedly said he was "impressed" and could not believe that Plaintiff knew that information "because most women don't."  Id. On another occasion, Mr. Ford asked Plaintiff to take notes in a manager's meeting.  (Pl. Depo., pp. 16-17).  Another time, Mr. Ford asked Plaintiff why she had taken so long for lunch.  (Pl. Depo., p. 20).  When she asked him why he gave her such a hard time, Mr. Ford allegedly responded, "I wouldn't give you a hard time if I didn't like you."  Id.  Mr. Ford then allegedly volunteered that there were people he did not like.  Id. at 20-21. On another occasion, Mr. Ford allegedly asked Plaintiff if she was Mr. Williams' mother because she spent so much time talking to him every morning.  (Pl. Depo., p. 21).

Plaintiff also complains that Mr. Ford once told her to let him know whenever she left the dealership. (Pl. Depo., pp. 167-68).  In addition, Mr. Ford asked plaintiff's male co-workers to lunch and dinner occasionally, but never invited her.  Id. at 15. On one occasion, Mr. Ford asked her to remain at the dealership and work deals while he took managers and sales consultants to an off-site training meeting.  (Pl. Depo., pp. 25-27).

Plaintiff never complained to Champion management that she believed any of Mr. Ford's comments were discriminatory, although

she knew about the company's avenues for reporting perceived
discrimination or harassment.  Id. at 23, 161, 213-14.

## IV.   SUMMARY JUDGMENT STANDARD

Summary judgment is required against a party who fails to
make a showing sufficient to establish the existence of an
element essential to her case and on which she will bear the
burden of proof at trial.  See Fed. R. Civ. P. 56(c); Celotex
Corp. v. Catrett, 477 U.S. 317, 326 (1986).  Once the movant
makes the initial showing that no evidence supports the non-
movant's case, the non-movant must present competent evidence
that a genuine issue of material fact issue exits.  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All inferences to
be drawn from the underlying facts in the materials presented by
the parties must be viewed in the light most favorable to the
non-moving party.  Reeves v. Sanderson Plumbing Prods., Inc., 530
U.S. 133, 150 (2000).  Mere conclusory allegations,
unsubstantiated assertions, improbable inferences, and
unsupported speculation are not competent evidence to defeat a
summary judgment motion.  TIG Ins. Co. v. Sedgwick James of
Wash., 276 F.3d 754, 759 (5th Cir. 2002); Eason v. Thaler, 73
F.3d 1322, 1325 (5th Cir. 1996).  In the employment
discrimination context, the ultimate question for summary
judgment is whether a rational fact finder could find that the
employer intentionally discriminated against the plaintiff

because of membership in a protected class.  St. Mary's Honor
Ctr. v. Hicks, 509 U.S. 502, 511 (1993) (citing Tex. Dep't of
Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)).

## V.   AT-WILL DOCTRINE

In Texas, the longstanding rule is that employment at-will
is terminable at any time with or without cause in the absence of
an express agreement to the contrary.  Coburn Supply Co., v.
Kohler Co., 342 F.3d 372, 375 (5th Cir. 2003) (citing W.G.
Pettigrew Distrib. Co. v. Borden, Inc., 976 F. Supp. 1043, 1054
(S.D. Tex. 1996)).  A party in Texas may terminate an at-will
employment relationship for a good reason, a bad reason, or no
reason at all.  Id. (citing Perez v. Vinnell Corp., 763 F. Supp.
199, 200 (S.D. Tex. 1991)).

## VI.  DISCRIMINATION STANDARD

A Title VII plaintiff always bears the ultimate burden of
persuading the trier of fact that the defendant intentionally
discriminated against her.  Reeves, 530 U.S. at 138-43 (citing
Burdine, 450 U.S. at 253).  Absent direct evidence of
discrimination,[3] she must first prove a prima facie case by a
preponderance of the evidence.  LaPierre v. Benson Nissan, Inc.,

---

[3] Plaintiff argues that comments made by Mr. Ford constitute direct
evidence of discrimination.  (Pl. Resp. to Def. Mot. for Summ. J., p. 11).
However, no evidence is presented that any of Mr. Ford's comments were related
to the employment decision at issue and no evidence is presented that many of
the comments were even related to Plaintiff's protected class.  See Section
IV, C, 4 herein.  Mr. Ford's remarks are stray remarks and do not constitute
even indirect evidence of discrimination.  See id.

86 F.3d 444, 448 (5th Cir. 1996)(citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).  The prima facie burden is usually satisfied by showing that: 1) she is a member of a protected class; 2) she was qualified for the position; 3) she suffered an adverse employment action; and 4) she was replaced by a person outside the protected group, or others similarly situated were treated more favorably.  Septimus v. Univ. of Houston, 399 F.3d 601, 609 (5th Cir. 2005).

Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  Burdine, 450 U.S. at 254; LaPierre, 86 F.3d at 448; Meinecke v. H&R Block of Houston, 66 F.3d 77, 83 (5th Cir. 1995).  If the employer meets this burden, the prima facie case dissolves, and the burden shifts back to the plaintiff to establish that the proffered reason is a pretext for discrimination.  St. Mary's Honor Ctr., 509 U.S. at 507-08; Meinecke, 66 F.3d at 83.  The plaintiff retains the ultimate burden of persuasion throughout the case.  Burdine, 450 U.S. at 256; Meinecke, 66 F.3d at 83.  Whether summary judgment is appropriate depends on a number of factors, including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that may be properly considered...."  Reeves, 530 U.S. at 148-49.

A.   **PRIMA FACIE CASE**

Defendant argues that Plaintiff cannot prove a prima facie case of discrimination because she fails to show she was replaced by a person outside the protected group or others similarly situated were treated more favorably. (Def. Mot. for Summ. J., pp. 12-14).  A genuine issue of material fact, however, does exist on this issue because it is unclear from the evidence presented whether Plaintiff was the F&I Director, as Plaintiff argues and as her business cards indicated, (Pl. Resp. to Def. Mot. for Summ. J., p. 4; Pl. Depo., pp. 194-95 & Ex. 32), or whether she was an F&I Manager as Defendant argues and as her pay status indicated (Def. Mot. for Summ. J., p. 13; Pl. Depo. pp. 118-19, 157 & Exs. 9, 11).  Plaintiff's actual position is critical to determining whether she was "replaced" and in fact, suffered an adverse employment action.[4]  However, even assuming

---

[4] Defendant argues Plaintiff was an F&I Manager.  Plaintiff's and Mr. Williams' payroll records reflect that they were paid under the same title code, 349N122, and were paid under Champion's Terms and Conditions for the F&I Manager Pay Plan.  (Pl. Depo., pp. 107, 112-13, 118-19, 157 & Exs. 7, 9 & 11).  F&I Director Mr. Meave was paid under title code 349A111 and was paid pursuant to the F&I Director Pay Plan.  Id. at 123, 157 & Exs. 8, 12.  If this is true, Plaintiff cannot show that she was replaced; instead, Mr. Meave took a newly created F&I Director position.  Additionally, if she was an F&I Manager, she cannot show others similarly situated were treated more favorably.  Mr. Ford's changes affected male and female personnel. He demoted a male sales manager, Don Stryk, and reduced his salary accordingly.  (Ford Aff. ¶ 10; Bregman Depo., p. 59).  He terminated a male Service Manager, Eliseo Yruegaz, and a male Parts Manager, Glen Rachui, resigned in lieu of termination.  (Ford Aff. ¶ 10).  Whereas, a female internet manager, Brittany Peese, who was performing satisfactorily had no change in her position.  Id. at ¶ 11.

On the other hand, Plaintiff argues that she was the F&I Director at Champion Chevrolet and the only female Director at the dealership.  (Pl. Depo., pp. 226-27).  Dustin Williams, a male, served as the Finance Manager. (Williams Depo., p. 7).  He considered Plaintiff the Director and his supervisor.  Id. at 7-8.  Other employees also considered her the F&I

Plaintiff was the F&I Director and can prove a <u>prima</u> <u>facie</u> case of discrimination, summary judgment is appropriate in this case as set forth below.

### B.   DEFENDANT'S LEGITIMATE, NON-DISCRIMINATORY REASON

Defendant has stated a neutral reason for its decision. Under Plaintiff's direction, the F&I department had consistently fallen short of its PVR and Product Index goals. (Ford Aff. ¶ 7). While Plaintiff was at Champion, the department consistently missed its $850 target by about $350. (Pl. Depo., pp. 42-43).

Not only were Plaintiff's PVR and Product Index numbers well below target, but she failed to demonstrate any strategy for improvement in the future. (Ford Aff. ¶ 9). On December 15, 2003, Ford e-mailed her about the low F&I numbers and asked her to formulate a plan for improvement by the end of the month. (Pl. Depo., p. 165 & Ex. 27). Plaintiff received the request, but never complied. <u>Id.</u> at 169.

An employee's failure to meet performance criteria is a legitimate, non-discriminatory explanation for an employment decision. <u>Sreeram v. La. State Univ. Med. Ctr.-Shreveport</u>, 188 F.3d 314, 320 (5th Cir. 1999); <u>see</u> <u>also</u> <u>Rubinstein v. Adm'rs of</u>

---

Director, were introduced to her as such, and knew her to be a supervisor in the dealership. (Bregman Depo., pp. 10-11, 33-34; Vega Depo. pp. 15-16). Business cards distributed to Plaintiff showed her to be the F&I Director. (Pl. Depo., pp. 194-95 & Ex. 32). Plaintiff's pay was structured so that she received commissions on deals she contracted herself, as well as on the department's overall performance. (Ford Aff. ¶ 5; Pl. Depo., p. 55). Mr. Williams received commissions only on his own contracted deals. (Williams Depo., p. 24). If this is true, Plaintiff was "replaced" by a person outside her protected group and can at least prove a <u>prima</u> <u>facie</u> case.

the Tulane Educ. Fund, 218 F.3d 392, 400 (5th Cir. 2000)
(professor's poor teaching skills was a legitimate, non-
discriminatory reason for employment decision).

Plaintiff's failure to meet Champion's PVR target was a
legitimate, non-discriminatory reason to hire an F&I Director who
could increase sales revenues.

### C.   PLAINTIFF'S BURDEN TO SHOW PRETEXT

Plaintiff argues that Mr. Ford's hiring of Mr. Meave was
merely a pretext to demote her because she is a woman.  However,
the mere fact that an employer selects a male instead of a female
does not raise a genuine issue of fact regarding discriminatory
intent.  Septimus, 399 F.3d at 610.

In Sreeram, for example, a female surgical resident was
terminated because she was not performing at expected levels,
despite her objective qualifications.  Sreeram, 188 F.3d at 319.
The fact that the hospital retained the male resident with lower
training scores, but better practical skills, did not raise a
genuine fact issue regarding pretext.  Id. at 321.

Moreover, a plaintiff's subjective belief of discrimination,
no matter how genuinely held, is not competent evidence.
Septimus, 399 F.3d at 610; Roberson v. Alltel Info. Servs., 373
F.3d 647, 654 (5th Cir. 2004).  Once the employer articulates a
neutral explanation, subjective beliefs and mere suspicion do not
create a fact issue as to pretext.  Auguster v. Vermilion Parish

Sch. Bd., 249 F.3d 400, 402 (5th Cir. 2001); Armendariz v.
Pinkerton Tobacco Co., 58 F.3d 144, 152 (5th Cir. 1995); Anderson
v. Douglas & Lomason Co., 26 F.3d 1277, 1298 (5th Cir. 1994).
Thus, subjective belief and unsubstantiated assertions cannot
raise an inference of discrimination sufficient to survive
summary judgment.  See Lawrence v. Univ. of Tex. Med. Branch at
Galveston, 163 F.3d 309, 313 (5th Cir. 1999); Nichols v. Loral
Vought Sys. Corp., 81 F.3d 38, 42 (5th Cir. 1996).  The fact that
plaintiff believes Mr. Ford discriminated against her does not
raise a genuine issue of material fact to preclude summary
judgment.

### 1.   CLEARLY BETTER QUALIFIED

In order to defeat summary judgment, a plaintiff must show
that he or she was *clearly better qualified* than the person
selected.  Odom v. Frank, 3 F.3d 839, 847 (5th Cir.
1993)(emphasis added).  The bar is high for such a showing
because differences in qualifications are generally not probative
of discrimination unless the disparities are of such weight and
significance that no reasonable person, exercising impartial
judgment, could have chosen the person selected over the
plaintiff for the job in question.  Celestine v. Petroleos de
Venezuela, SA, 266 F.3d 343, 357 (5th Cir. 2001).  In order to
show that an employer's choice was merely a pretext for
discrimination, and defeat summary judgment, a plaintiff's

qualifications must be so superior to those of the person selected that they "virtually jump off the page and slap [the Court] in the face." <u>EEOC v. La. Office of Cmty. Servs.</u>, 47 F.3d 1438, 1445 (5th Cir. 1995).

Plaintiff does not attempt to argue that she was clearly better qualified than Mr. Meave.  (Pl. Resp. to Def. Mot. for Summ. J., p. 17).  In fact, Plaintiff admits that Mr. Meave had experience that she lacked.  (Pl. Depo., p. 54).  Mr. Meave had worked in finance for Ford Motor Credit, a major automotive manufacturer, and had extensive knowledge of structuring deals with captive financing.  (Pl. Depo., p. 32; Ford Aff. ¶ 8).  Mr. Ford selected Mr. Meave, after observing his performance at another dealership, because he had talent and experience critical to the F&I Director position.  (Ford Aff. ¶ 8).  In addition, Mr. Meave had demonstrated expertise at developing the skills of F&I Managers reporting to him, which in turn, maximized their personal commissions and revenue for the dealership.  <u>Id.</u> Plaintiff admits that this is an important ability for someone in charge of the F&I Department.  (Pl. Depo., p. 150).

In comparison, Plaintiff's PVR and Product Index numbers were well below target, and she failed to demonstrate a strategy for improvement in the future, even when Ford specifically requested her to do so.  (Pl. Depo., pp. 89-90, 159-60, 162-65, 169 & Ex. 27; Ford Aff. ¶ 9). Plaintiff fails to demonstrate that she was clearly better qualified than Mr. Meave.

### 2.   FALSE EXPLANATION

Relying on <u>Sanders v. Anadarko Petroleum Corp.</u>, 2004 WL 1834601 (5th Cir. 2004)(unpublished), plaintiff argues that she can establish pretext by presenting evidence that the employer's proffered explanation is false or unworthy of credence.  For example, she points out that Mr. Ford told her it would be in her best interest to transfer to the other dealership, (Williams Depo., pp. 15-16; Bregman Depo., p. 23), and that two of her co-workers viewed the restructuring as a demotion for her. (Williams Depo., p. 17; Bregman Depo., p. 23).

This evidence addresses the issue of whether Plaintiff was the F&I Director or the F&I Manager when the restructuring took place, not whether or not she was replaced and suffered an adverse employment action.  As such, this evidence is relevant to whether Plaintiff can establish a <u>prima</u> <u>facie</u> case of discrimination, but is not relevant to the issue of pretext.

### 3.   PLAINTIFF'S PERFORMANCE

Plaintiff next argues that Defendant's proffered reason was pretext because Plaintiff's performance was, in fact, good.  (Pl. Resp. to Def. Mot. for Summ. J., p. 18).  In support of this argument, Plaintiff offers the testimony of two co-workers and an office manager that Plaintiff was a good director.  (Bregman Depo., pp. 12-15; Williams Depo., p. 17; Vega Depo., p. 16). None of these three witnesses, however, knew what Plaintiff's

expected PVR goals or what PVR she was achieving.  See (Pl. Resp. to Def. Mot. for Summ. J., pp. 18-19).  In contrast, Mr. Ford, as General Manager, had access to information necessary to judge plaintiff's job performance, and he testified that job performance is measured primarily on PVR. (Ford Aff. ¶¶ 6 & 7; Pl. Depo., pp. 134-36).  Plaintiff's PVR was not up to expectations.  (Ford Aff. ¶ 7; Pl. Depo., pp. 42-43; Williams Depo., pp. 37-38).[5]

Plaintiff argues that she was doing a good job because Mr. Ford recommended that another employee, Dustin Williams, attend Finance Manager training, but he did not suggest that plaintiff needed this additional training.  In addition, Mr. Ford did not include plaintiff in an off-site managers training meeting, but instead asked her to remain at the dealership with other sales

---

[5] Plaintiff's disagreement with Mr. Ford's decision to hire Mr. Meave does not mean it was discriminatory.  A plaintiff cannot raise a fact issue as to whether an employer discriminated by choosing one employee over another unless he demonstrates that the employer's decision was more than merely a bad business decision.  Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 959 (5th Cir. 1993).  She must show a mistake of judgment large enough that one wonders whether it was a mistake at all.  Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 814 (5th Cir. 1991).  In other words, courts do not review personnel decisions for their wisdom. See Mato v. Baldauf, 267 F.3d 444, 453 (5th Cir. 2001).  Unless the record shows that the plaintiff was clearly better qualified than the person chosen, personnel decisions are properly left to those whose own experience and expertise in the field qualify them to evaluate other personnel.  Id.

In the present case, Mr. Ford's own experience and expertise uniquely qualified him to decide who should manage Champion's F&I Department.  (Ford Aff. ¶ 6).  Under Plaintiff's management, the department consistently missed the PVR target by about $350 and performed in the lowest quartile in the region.  (Pl. Depo., pp. 42-43, 171).  Under Mr. Meave's direction, the F&I Department's PVR was raised to $1,100 and with that increased PVR, it now consistently performs in the top quartile in the region.  (Ford Aff. ¶ 7). Thus, Mr. Ford's decision was sound and raised no issues of pretext.

people.[6]   (Pl. Depo., pp. 25-27; Ford Depo., pp. 148-49 & Ex. 1).
The fact that plaintiff did not need additional training does not
equate with a finding that Plaintiff was doing a good job.
Moreover, if Plaintiff was a director and not a manager, as she
has argued, there would be no reason to include her in the
manager training in the first place.

Plaintiff argues that her good job performance is evidenced
by her not being reprimanded for poor performance or placed on a
performance improvement plan.  (Pl. Resp. to Def. Mot. for Summ.
J., p. 19; Ford Depo., pp. 144-47).  Again,the fact that
plaintiff was not reprimanded or placed on probation does not
equate with a finding that she was doing a good job.[7]

Finally, Plaintiff argues that although Mr. Ford felt
Plaintiff lacked proper contracting skills and did not spend
enough time with customers, he allegedly contradicted this
statement by saying that it was in her "best interest" to leave
and go to a higher volume dealership which would "afford her the
opportunity to see more customers and contract more deals."  (Pl.
Resp. to Def. Mot. for Summ. J., p. 18; Pl. Depo., pp. 46-47;
Ford. Aff. ¶ 4).  This statement does not evidence that Plaintiff

---

[6] Plaintiff's argument that her exclusion from an off-site training
meeting means she was doing a good job, contradicts her attempted use of this
incident as evidence of discrimination.  (Pl. Resp. to Def. Mot. for Summ. J.,
p. 19).

[7] Furthermore, there is no requirement under Texas law that an at-will
employee be put on a performance improvement plan prior to termination.  See,
e.g., Coburn, 342 F.3d at 375; Spinks v. Trugreen Landcare, L.L.C., 322 F.
Supp.2d 784, 790-96 (S.D. Tex. 2004).

performed her job well.  It is only a reasoned observation that a dealership with higher volume would have potentially more deals.

Plaintiff fails to demonstrate that Defendant made contradictory statements, let alone that these statements establish pretext.

### 4.   STRAY REMARKS

It is well settled in the Fifth Circuit that stray remarks unconnected to an employment decision cannot create a fact issue regarding a discriminatory intent and are insufficient to defeat summary judgment.  Auguster, 249 F.3d at 404-06; Scales v. Slater, 181 F.3d 703, 712 (5th Cir. 1999).  Plaintiff argues that the stray remarks doctrine was "essentially overruled" by the Supreme Court in Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000).  (Pl. Resp. to Def. Mot. for Summ. J., p. 21).  However, the Fifth Circuit expressly interpreted Reeves as not overruling its stray remarks jurisprudence, especially in instances where the plaintiff fails to produce substantial evidence of pretext.  Auguster, 249 F.3d at 405 (citing Rubinstein, 218 F.3d at 400-01) (applying the stray remarks doctrine where the plaintiff failed to establish that each of the defendant's articulated justifications was pretext).

Remarks are not sufficient evidence of workplace discrimination unless they 1) are related to the protected characteristic; 2) are proximate in time to the adverse

18

employment action; 3) are made by an individual with authority over the decision; and 4) are related to the employment decision at issue. Auguster, 249 F.3d at 405 (citations omitted). In short, the comments must be direct and unambiguous, allowing a reasonable jury to conclude, without inferences or presumptions, that a protected category was a factor in the employer's decision. EEOC v. Texas Instruments, Inc., 100 F.3d 1173, 1181 (5th Cir. 1996).

For comments to constitute evidence of pretext, they must explicitly convey discriminatory animus. Without some connection between the alleged comments and the adverse employment decision, the comments do not create a genuine issue of material fact. See Scales, 181 F.3d at 712. Absent this connection, comments far more blatantly discriminatory than those alleged by Plaintiff in the present case have been held insufficient evidence of discrimination. See, e.g., Sreeram, 188 F.3d at 319-20 (comments by supervising doctors that a female resident was "not accepted well by the good old boys," had "cultural" difficulties, "needed deodorant," and that women residents do not have time to "do a lot of things girls need to do" did not support an inference of pretext); Ray v. Tandem Computers. Inc., 63 F.3d 429, 434 (5th Cir. 1995) (male supervisor's remarks that they were "going to get rid of the 'c--- in the office'" and that a co-worker was the "better man for the job" did not combine to support an inference of sex discrimination).

19

Plaintiff offers only a few isolated comments that are far less offensive than the examples discussed above.  For example, Plaintiff alleges that Mr. Ford once stated that he did not want "to deal or speak to a woman."  (Pl. Depo., pp. 13-14).  She also alleges that when she mentioned "the sun rising in the east and setting in the west," Ford allegedly said he was "impressed" and could not believe Plaintiff knew that information "because most women don't."  Id.  Plaintiff provides no evidence showing these comments are connected in any way to the employment decision at issue.

Next, Plaintiff alleges that Mr. Ford once asked her if she was Mr. Williams' mother because she spent so much time talking with him every morning.  Again, no evidence relates this comment to the employment decision at issue.  Furthermore, Plaintiff admits Mr. Ford's comment could have been his way of telling her to spend less time in Mr. Williams' office and more time in her own.  (Pl. Depo., pp. 21, 24-25).

Similarly, Plaintiff complains that Mr. Ford once asked her why she had taken so long for lunch and told her, "I wouldn't give you a hard time if I didn't like you."  No evidence relates this comment to her protected class or to the employment decision at issue.

Finally, Plaintiff alleges that Mr. Ford volunteered that he would be getting rid of people he did not like.  (Pl. Depo., pp. 20-21).  This comment is not tied to Plaintiff's protected class.

Moreover, in Texas, an at-will employee can be terminated for any reason or no reason at all.  See Coburn, 342 F.3d at 375.

Plaintiff cites to no other gender-related comments by Mr. Ford.  (Pl. Depo., p. 15).  There is no evidence that Mr. Ford made derogatory comments about plaintiff.  There is no evidence to link Mr. Ford's comments to the decision to hire Mr. Meave. Finally, there is no evidence to suggest that the outcome would have been different if Plaintiff had been a male employee.

### 5.   OTHER INCIDENTS

Plaintiff alleges that certain conduct of Mr. Ford evidences pretext.  For example, she complains that Mr. Ford once told her to let him know whenever she left the dealership; however, she admits he made a similar request of Mr. Bregman, a male employee. (Pl. Depo., pp. 167-68).  Plaintiff also alleges that Mr. Ford once asked her to take notes in a manager's meeting, but admits he made the same request of male employees on occasion.  (Pl. Depo., pp. 16-17; Williams Depo., pp. 28-29).  She further complains that Mr. Ford asked her male co-workers out to lunch and dinner occasionally without inviting her, but he also did not invite other male employees.  (Pl. Depo., p. 15; Bregman Depo., p. 63).  Similarly, Mr. Ford once asked Plaintiff and some seasoned male salespeople to remain at the dealership and work deals while he took other managers and sales consultants to an off-site training meeting.  (Pl. Depo., pp. 25-27).

21

In all of these instances, male employees were treated the same as Plaintiff.  This gender-neutral conduct fails to raise a fact issue regarding pretext, and Plaintiff's subjective belief of discrimination is not competent evidence.  <u>Septimus</u>, 399 F.3d at 610.

## V.    COSTS AND ATTORNEYS' FEES

A prevailing party is entitled to costs other than attorneys' fees unless the court otherwise directs.  Fed. R. Civ. P. 54; <u>see</u> <u>Byers v. The Dallas Morning News, Inc.</u>, 209 F.3d 419, 430 (5th Cir. 2000).  As the prevailing party in this matter, Defendant is entitled to recover its costs.

Recovery of attorneys' fees by a defendant in a Title VII action may only be had upon a finding that the plaintiff's claim was frivolous, groundless, or made in bad faith.  <u>Commonwealth Oil Refining Co., Inc. v. EEOC</u>, 720 F.3d 1383, 1385 (5th Cir. 1983) (<u>Christianburg Garment Co., v. EEOC</u>, 434 U.S. 412 (1978). This stringent standard does not apply to the award of costs. <u>Id.</u>  Defendant has set forth no argument supporting its entitlement to an award of attorneys' fees and, although the Plaintiff's claim does not survive summary judgment, it was not frivolous, groundless, or made in bad faith.  <u>See</u> <u>Byers</u>, 209 F.3d at 430 (affirming the award of costs, excluding attorneys' fees, to a prevailing defendant in a Title VII summary judgment proceeding).  Therefore, the Defendant is not entitled to its

22

attorneys' fees.

## VI.   CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment (D.E. 40) is GRANTED and Plaintiff's claims are dismissed with prejudice.   Defendant is awarded its costs but not its attorneys' fees.

ORDERED this 11th day of August, 2005.

_____
Janis Graham Jack
United States District Judge